SEYMOUR, SABIN & CO. V. LEROY COOPER, *et al.*

1. GARNISHMENT, *Under Justices' Code; No Error.* Originally the plaintiffs brought suit before a justice of the peace of Harvey county, against the defendants, on a promissory note, in which suit the plaintiffs recovered judgment. Execution was thereupon issued, and, being returned unsatisfied, the plaintiffs filed an affidavit, under §155 of the justices' code, for garnishee process against the Atchison, Topeka & Santa Fe railroad company, which company, being duly notified, appeared before the justice of the peace and answered that it was indebted to the defendant Leroy Cooper in the sum of $60.75, for personal services rendered by him in December, 1880, and that the same was then due. Thereupon the defendant Leroy Cooper moved the court, under §157 of the justices' code, to discharge the garnishee and release the money garnished, which motion was sustained by the court, and the garnishee was discharged. The plaintiffs then brought the present action before another justice of the peace upon the judgment above mentioned, and at the same time filed an affidavit, under §1, ch. 163 of the Laws of 1872, (Comp. Laws 1879, p. 711,) for a garnishee summons against the Atchison, Topeka & Santa Fe railroad company, which summons was duly issued and served, and the railroad company answered that it was indebted to the defendant Leroy Cooper, in the sum of $87.75, as follows: $63 for personal services rendered in December, 1880, and $24.75 for personal services rendered in January, 1881. The defendant Leroy Cooper then moved the court, under §157 of the justices' code, to dismiss the garnishee proceedings, and to discharge the moneys garnished, which motion was supported by several affidavits to the effect that the defendant Leroy Cooper was the head of a family, consisting of an aged mother and a sister, and that the moneys garnished were his personal earnings for labor performed, and were necessary for the maintenance and support of his family. This motion came on for hearing at the trial of the cause. The plaintiff insisted that the motion to discharge the garnishee should be heard and disposed of before proceeding with the trial of the action. To this the defendant objected, and the court sustained the objection and proceeded with the trial of the cause; and, after giving judgment for the plaintiffs on the plaintiffs' former judgment, the motion was heard and sustained by the court as to so much of the money as had been previously garnished in the former action, to wit, $60.75, and was overruled as to the remainder, to wit, $27, which sum was ordered to be paid into court—to all of which rulings, adverse to the plaintiffs, the plaintiffs duly excepted, and to reverse the same filed their petition in error in the district court of Harvey county, in which court, after a hearing of the case, the judgment and rulings of the justice of the peace were affirmed; and the plaintiffs, to re-

verse the decision 'and judgment of the district court, now bring the case to this court for review. *Held,* That neither the district court nor the justice of the peace committed any error as against the plaintiffs in error.

2. ———— *Family.* Under the facts of this case, as above stated, the defendant's mother and sister constituted a family, within the meaning of §157 of the justices' code.

3. PERSONAL EARNINGS, *Exempt from Garnishment.* Under the facts of this case, as above stated, and under §157 of the justices' code, the personal earnings of the defendant were exempt from the garnishee summons issued in this case under chapter 163 of the Laws of 1872; and in general, the personal earnings of a debtor for three months next preceding the issuing of any process against him for the collection of a debt, whether such process is issued before or after judgment, and whether it is an attachment, or a garnishment process, or an execution, so far as such earnings are necessary for the support of the debtor's family, are exempt from such process.

*Error from Harvey District Court.*

ACTION originally brought before a justice of the peace by *Seymour, Sabin & Co.* against *Leroy Cooper* and another, on a promissory note. At the March Term, 1881, of the district court, the rulings and judgment of the justice were affirmed. The plaintiffs bring the case here. The nature of the action, and the facts, appear in the opinion.

*Bowman & Bucher,* for plaintiffs in error:

Sec. 157 of the justices' act was, we think, enacted for the protection of such families as have a legal right to ask for and receive maintenance from the debtor, and which it is the debtor's duty to support. We don't think it was ever intended by that act to fix an obligation upon a child to support his parents or sisters, or to give him a right to do so to the prejudice of his creditors. Then if no legal obligation rests on the defendant to maintain his mother and sister, no matter how solemn the moral obligation, he cannot appropriate his earnings to their benefit to our prejudice by this motion.

Sec. 157 is not applicable to the facts of this case. In this state no property of any kind is exempt from being applied by law to the payment of debts, except such as is particularly designated by statute. Our exemption act nowhere

attempts to exempt the debtor's earnings, which are in money, and in the hands of a third person, from seizure by attachment or garnishment. In *Snook v. Snetzer*, 26 Ohio St. 516, the court's construction of §§ 193 and 490 of the civil code cuts. no figure in this case, for we have no provision in the justices' act that is similar to § 490 of the code.

*Joseph W. Ady*, for defendants in error:

Sec. 157 of the justices' code, § 490 of the civil code, and § 6, ch. 38, of Gen. Stat., show a fixed determination to protect the earnings of the laborer against the rapacity of· his creditor on the one hand, and the fraud or dishonesty of his debtor on the other. (14 Kas. 566. See also Thompson on Homesteads, §§ 4, 7, 55–59, 731; 2 Dill. 343; Gen. Stat. 1868, ch. 104, § 1, subdiv. 29; 25 Ohio St. 516.)

The opinion of the court was delivered by

VALENTINE, J.: Originally the plaintiffs brought suit before a justice of the peace of Harvey county, against the defendants, on a promissory note, in which suit the plaintiffs recovered judgment. Execution was thereupon issued, and, being returned unsatisfied, the plaintiffs filed an affidavit under § 155 of the justices' code, for garnishee process against the Atchison, Topeka & Santa Fé railroad company, which company, being duly notified, appeared before the justice of the peace and answered that it was indebted to the defendant Leroy Cooper in the sum of $60.75 for personal services rendered by him in December, 1880, and that the same was then due. Thereupon the defendant Leroy Cooper moved the court, under § 157 of the justices' code, to discharge the garnishee and release the money garnished, which motion was sustained by the court and the garnishee was discharged. The plaintiffs then brought the present action before another justice of the peace upon the judgment above mentioned, and at the same time filed an affidavit, under § 1, ch. 163 of the Laws of 1872, (Comp. Laws 1879, p. 711,) for a garnishee summons against the Atchison, Topeka & Santa Fé rail-

road company, which summons was duly issued and served, and the railroad company answered that it was indebted to the defendant Leroy Cooper in the sum of $87.75, as follows: $63 for personal services rendered in December, 1880, and $24.75 for personal services rendered in January, 1881. The defendant Leroy Cooper then moved the court, under § 157 of the justices' code, to dismiss the garnishee proceedings and to discharge the moneys garnished, which motion was supported by several affidavits to the effect that the defendant Leroy Cooper was the head of a family, consisting of an aged mother and a sister, and that the moneys garnished were his personal earnings for labor performed, and were necessary for the maintenance and support of his family. This motion came on for hearing at the trial of the cause. The plaintiffs insisted that the motion to discharge the garnishee should be heard and disposed of before proceeding with the trial of the action. To this the defendant objected, and the court sustained the objection and proceeded with the trial of the cause; and after giving judgment for the plaintiffs on the plaintiffs' former judgment, the motion was heard and sustained by the court as to so much of the money as had been previously garnished in the former action, to wit, $60.75, and was overruled as to the remainder, to wit, $27, which sum was ordered to be paid into court—to all of which rulings adverse to the plaintiffs, the plaintiffs duly excepted, and to reverse the same, filed their petition in error in the district court of Harvey county, in which court, after a hearing of the case, the judgment and rulings of the justice of the peace were affirmed, and the plaintiffs, to reverse the decision and judgment of the district court, now bring the case to this court for review.

Of course, the only rulings of the district court and of the justice of the peace which the plaintiffs wish to have reviewed and reversed are those relating to the said sum of $60.75, which was garnished in the first action before the first-mentioned justice of the peace. As to all the other rulings, the plaintiffs have no cause for complaint, and do not complain.

The plaintiffs raise two questions in this court: *First*, they claim that the mother and sister of the defendant Leroy Cooper do not constitute a family within the meaning of said § 157; *second*, they claim that although the defendant's wages might be exempt from an execution, yet that they are not exempt from attachment or garnishment.

The defendant Leroy Cooper also raises a question in this court; he claims that the decision of the justice first mentioned, in the action first brought by the plaintiffs, is *res adjudicata*, and therefore that the question whether said sum of $60.75 was exempt or not from attachment or garnishment, could not be again heard or determined by any other court.

We shall consider these questions in their order:

I. The plaintiffs claim that the defendant's mother and sister do not constitute a family within the meaning of § 157 of the justices' code. We think they do. His mother was a widow, aged sixty-two years; his sister was unmarried, and they all lived together as one family, the defendant being the head thereof, and principally by his own personal earnings and services supported the family, and such earnings and services were necessary for their support. It is provided by statute in this state that, "The phrase 'head of a family' shall include any person who has charge of children, relatives or others living with such person." (Comp. Laws of 1879, p. 920. See also Thompson on Homesteads, §§ 55–60.)

II. The next question is, whether the defendant's personal services or earnings are exempt from attachment or garnishment under the circumstances of this case. This is a very difficult question; one upon which the district courts of the state have differed, and one upon which the bar of the state have also differed. It seems that the statutes do not anywhere in express terms create such an exemption; and yet, upon examination of the various sections of the statutes having reference to this subject, it will be seen that the law-making power evidently intended that such an exemption should exist. The law-making power seems to favor laborers, or persons who earn their livelihood by their own personal exertions.

Under § 6 of the exemption law, no personal property is exempt from laborers' wages. (Comp. Laws 1879, p. 438.) Under § 490 of the civil code, which relates to proceedings in aid of execution, three months' personal services of a laborer, if necessary for his family, are wholly exempt, and the supreme court of Ohio have construed a similar provision in the civil code of that state to exempt such personal services from proceedings in attachment, as well as from proceedings in aid of execution. (*Snook v. Snetzer*, 25 Ohio St. 516.) And § 157 of the justices' code exempts such personal services from execution. If such personal services are not exempt from attachment and garnishment, it is a clear case of oversight and unintentional omission on the part of the legislature. Unquestionably the legislature intended that such personal services should be exempt. And whether they are exempt or not, we shall now proceed to more minutely consider.

The garnishment proceedings in this case were brought under chapter 163 of the Laws of 1872. (Comp. Laws 1879, p. 711.) The first section of that chapter provides for issuing a summons in garnishment, and this section corresponds with § 37 of the justices' code. It also provides that the garnishment lien shall attach at the time of the service of the summons, and in this respect it corresponds with § 51 of the justices' code. Section 2 of said chapter provides for the service of the summons, etc. Section 3 of said chapter reads as follows:

"SEC. 3. The garnishee shall appear before the justice in accordance with the commands of said summons, and the same proceedings shall thereafter be had in case of the appearance or default of said garnishee, as nearly as may be, and with like effect as in proceedings against a garnishee in attachment before justices of the peace."

There are no other provisions in said chapter prescribing the procedure in garnishment proceedings; but we are referred by § 3, above quoted, to garnishment proceedings under the justices' code. These proceedings are provided for and prescribed by §§ 39 to 54 of the justices' code.

Section 47 is the only one which we need refer to in this connection. It reads as follows:

"Sec. 47. If judgment be rendered for the plaintiff, it shall be satisfied as follows: So much of the property remaining in the hands of the officers, after applying the moneys arising from the sale of perishable property, and so much of the personal property, if any, as may be necessary to satisfy the judgment, shall be sold by order of the justice under the same restrictions and regulations as if the same had been levied on by execution; and the money arising therefrom, with the amount which may be recovered from the garnishee, shall be applied to satisfy the judgment and costs. If there be not enough to satisfy the same, the judgment shall stand, and execution may issue thereon for the residue, in all respects as in other cases. Any surplus of the attached property, or its proceeds, shall be returned to the defendant."

It appears from this section that all personal property which has come into the officer's hands, by virtue of attachment or garnishment proceedings, is to be sold under the same restrictions and regulations as if the same had been levied on by execution; and evidently all moneys obtained by virtue of attachment or garnishment should be applied in the same manner, as far as possible, as though they had been obtained by virtue of an execution. The section, however, does not expressly state this, but we think it means this by fair implication. Neither an attachment process nor a garnishment process issued before judgment is a final process. They are only processes issued at the beginning or during the pendency of the case, to aid in satisfying the final process, which is ordinarily the execution. It is always the execution, or an order of the court, which answers the purpose, and is in substance the execution. These original or mesne processes are resorted to only for the purpose of obtaining something which can be made available by means of the final process, which is the execution. They are simply forerunners of the execution, and something to aid and assist the execution, and inferentially can go no further in seizing property than the execution can go; hence we are referred by § 47 to the execution, expressly with reference to tangible property and impliedly

35 — 26 KAS.

with reference to intangible property held by virtue of attachment or garnishment proceedings; and § 157 of the justices' code provides what of the personal earnings of the defendant shall be exempt when an execution is issued against him. This section reads as follows:

"SEC. 157. The earnings of the debtor for his personal services, at any time within three months next preceding the issuing of an execution, cannot be applied to the payment of his debts, when it is made to appear, by the debtor's affidavit, or otherwise, that such earnings are necessary for the maintainance of a family supported wholly or partly by his labor."

This section says nothing of exemptions, except an exemption from execution; but of course it is well known that the personal earnings of a debtor cannot be taken directly by execution. No execution can be levied directly upon the personal earnings due from some other person to the debtor. These must of course be obtained by attachment or garnishment. It would seem from the situation in which this section is placed that it refers only to garnishment proceedings after judgment; but as all garnishment proceedings must look either forward or backward to an execution, it would seem fair to say that the section applies to all property held by garnishment proceedings, whether the garnishment proceedings were instituted before or after judgment. This section really corresponds with § 490 of the civil code, and is intended more directly to relate to garnishment proceedings after judgment and in aid of execution; but as we have said before, we think it may be extended so as to relate to all garnishment proceedings. This is the view entertained by the supreme court of Ohio in construing the code of Ohio. Section 467 of the civil code of Ohio is almost identical with § 490 of the civil code of Kansas, and under that section the supreme court of Ohio holds that the clause which reads: "But the earnings of the debtor for his personal services, at any time within three months next preceding the order, cannot be so applied, when it is made to appear by the debtor's affidavit, or otherwise, that such earnings are necessary for the use of a family supported wholly or partly by his labor," is an exemption of the per-

sonal earnings of the debtor for three months next preceding process, and that they cannot be taken in attachment proceedings any more than they can be taken in proceedings in aid of execution. In effect, the supreme court of Ohio holds that this provision is not merely a limitation upon proceedings in aid of execution, but that it is really an exemption of personal property to the debtor, and if the decision in Ohio is correct, then it follows that the personal services or earnings of the present defendant Leroy Cooper for the three months next preceding the issuing of the process, so far as they are necessary for the support of his family, (and they are all necessary in the present case,) are exempt from attachment and garnishment, as well as from execution, and that the decision of both of the justices of the peace with regard to said $60.75, is correct; and also, that the decision of the district court with reference thereto is also correct.

Any other construction of § 157 of the justices' code and § 490 of the civil code, would virtually nullify them. The present case is a fair illustration of the truth of this proposition. Construing the statute as the plaintiffs in this case construe it, it would lead to this: If a creditor cannot obtain the personal wages of his debtor on an execution, or by virtue of garnishment proceedings after judgment, he may commence a new action on the judgment and obtain such wages by means of garnishment proceedings, before the second judgment; and if all the wages of the debtor do not in the first instance satisfy the creditor's claim, he may continue to commence new actions upon each succeeding judgment, (all the judgments being in fact rendered for the collection of the same original claim,) until his claim is finally satisfied, and taking all the wages of the debtor continuously as fast as the debtor earns them—and perhaps for months or years. This is certainly not what was intended by the legislature. It is not necessary under chapter 163 of the Laws of 1872, that the debtor should have committed any fraud or should have been guilty of any wrong, or that he should be a non-resident of the county or state, in order to enable the creditor to obtain a

garnishment summons. All that is necessary is, that the debtor should be poor and unable to pay his debts; or, in the language of the statute, "that the plaintiff [the creditor] has good reason to and does believe that he will lose the same [his claim] unless a garnishee summons issue." As we have stated before, we think that said chapter 163 was unquestionably intended only to reach property which is not exempt from execution.

We think there can be no question as to the validity of said § 157 of the justices' code and § 490 of the civil code, with the construction we have placed upon them; and with the construction that we have placed upon these sections and upon chapter 163 of the Laws of 1872, we think it is not necessary to discuss the further question suggested by the defendant.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

BREWER, J., dissenting.