**In re TOWN & COUNTRY COLOR TELE-VISION, INC., Employer ID No. 85–0209665, and Henry Allen Flowers, SS # 459–74–1376, Debtors.**

**Donald D. BECKER, trustee, Plaintiff,**

**v.**

**AMERICAN BANK OF COMMERCE and Glass & Fitzpatrick, Defendants.**

**Bankruptcy Nos. 81–01000 MA, 81–00999 MA.**
**Adv. No. 82–0174 M.**

United States Bankruptcy Court,
D. New Mexico.

Aug. 12, 1982.

Donald D. Becker, Albuquerque, N. M., for plaintiff.

Bradford H. Zeikus, Albuquerque, N. M., for defendant ABC.

Charles N. Glass, Albuquerque, N. M., for defendant Glass & Fitzpatrick.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the trustee's complaint to avoid the lien of creditor Glass & Fitzpatrick. At issue is $1,535.42 presently held by American Bank of Commerce (ABC) pursuant to a writ of garnishment served on ABC by Glass & Fitzpatrick. The trustee asserts that the writ of garnishment is a lien which is voidable by the trustee. ABC argues that no lien resulted and that it is entitled to the funds as a setoff of debts owed to ABC by the debtors.

## I. FACTUAL HISTORY

Henry Allen Flowers and Town & Country Color Television, Inc. (Town & Country), the debtors, became indebted to Glass & Fitzpatrick for money due for services rendered by Glass & Fitzpatrick. A complaint for money due was filed in Bernalillo County (New Mexico) District Court, and when the debtors failed to appear, Glass & Fitzpatrick obtained a default judgment. Pursuant to that judgment, a writ of garnishment was served on ABC, attaching $3,829.05 which was in an account in the name of Town & Country. At the time of service of the writ of garnishment, ABC had made three separate loans to Town & Country: one was unsecured, one was secured by two 1979 Ford vans, and one was secured by a 1978 Pontiac stationwagon. The unsecured loan was being kept current by Mrs. Flowers, who had guaranteed it. The secured loans were in default.

Forty-five days after the writ of garnishment was served on ABC, the debtors filed their bankruptcy petitions. The vehicles which secured the Town & Country loans were abandoned to ABC. The Pontiac stationwagon was sold, leaving a deficiency on the note which it secured of $3,684.15. The balance on the note secured by the vans is $5,760.68 plus repairs necessary for sale and costs of sale. The trustee then sued to recover from ABC the amount of the writ of garnishment and ABC answered, claiming a setoff in the entire amount of the Town & Country account, $3,829.05. At the trial on the trustee's complaint to avoid lien, the Court found that if there is an avoidable lien, it is limited to the amount of the Glass & Fitzpatrick judgment, $1,535.42. The balance was ordered to be distributed to ABC to be applied toward the deficiency of $3,684.15 on the note secured by the Pontiac stationwagon. It was further ordered that, if the sale of the two Ford vans brought more than the balance on the note secured by the vans, ABC must turn the excess over to the trustee, rather than applying it toward the deficiency on the other secured note. Preserved as issues were: (1) whether the writ of garnishment created a lien on the funds in the amount of the

judgment debt, and (2) if so, what is the effect of the lien on the various parties' entitlements to the funds.

## II. EFFECT OF THE WRIT OF GARNISHMENT

 The effect of a writ of garnishment is determined by the laws of the state in which the writ issues. *In re Woodman*, 3 C.B.C.2d 798, 8 B.R. 686 (Bkrtcy.W.D.Wis. 1981). The service of a writ of garnishment was interpreted to result in a lien in the case of *McFadden v. Murray*, 32 N.M. 361, 257 P. 999 (1927). Although the garnishment statute has undergone several changes since the date of that opinion, the present statute tracks the garnishment statute in the 1953 compilation of the New Mexico Statutes. That statute was found to be "identical in substance if not in form" to the garnishment statute considered in *McFadden. Advance Loan Co. v. Kovach*, 79 N.M. 509, 512, 445 P.2d 386, 389 (1968). Accordingly, we find that service of the writ of garnishment on ABC created a lien on that account, and that for purposes of the Bankruptcy Code, it is a judicial lien. 11 U.S.C. Section 101(27).

## III. EFFECT OF THE LIEN ON THE ENTITLEMENT OF THE ESTATE OR THE BANK TO THE FUNDS

██ In determining which entity is entitled to receive these funds, we find the reasoning in *In re Woodman, supra*, to be persuasive. In that case, as in the case before us, there existed a garnishment statute which made the garnishee responsible to the garnishing creditor for property of the defendant in the garnishee's possession at the time of service. The Wisconsin courts had further found that this statute created an equitable lien on the property, as is the case here. Analyzing these facts, the *Woodman* court found that these events created a transfer under 11 U.S.C. Section 547(e)(1)(B), because the garnishing creditor would have superior rights to another judgment creditor with a subsequent judicial lien based on a simple contract. *Id.*, 3 C.B. C.2d at 798–799, 8 B.R. at 687. Here, too,

the transfer from garnishee to garnishing creditor took place at the time of service of the writ of garnishment. That being the case, the $1,535.42 to which Glass & Fitzpatrick was entitled by judgment was no longer in the possession of ABC, and ABC was no longer indebted to the debtors in that amount. Obviously, then, no right of setoff existed. Further, because this transfer of funds to Glass & Fitzpatrick meets the definition of a preferential transfer set out in 11 U.S.C. Section 547(b), it can be avoided by the trustee.